BRYAN SCHRODER
United States Attorney

DUSTIN M. GLAZIER
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
Email: Dustin.Glazier@usdoj.gov

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| CHANTEL SHARAE LOUISE BEETUS,<br><br>    Plaintiff,<br> v.<br><br>UNITED STATES OF AMERICA<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. 4:19-cv-00044-SLG |

**MOTION TO DISMISS**

COMES NOW the UNITED STATES OF AMERICA and files its Motion to Dismiss Plaintiff Chantel Sharae Louise Beetus' Complaint against the United States and in support thereof states as follows:

# FACTS

Plaintiff Chantel Beetus alleges torts arising from an alleged sexual assault against her, a minor, by Eric Adams. The assault is alleged to have occurred while Ms. Beetus was attending the Tanana Tribal Council's ("TTC") 2017 Culture and Wellness Camp ("the Camp"), located on the banks of the Yukon River some distance upriver from Tanana Village ("Tanana"). Dkt 1.

Tanana Chiefs Conference ("TCC") received grants that allowed its member tribes, including TTC, to design and host culture camps. Affidavit of Doreen Deaton, Exhibit H at 4, 6. TCC received funding for the Culture Camp Program from three sources: (1) a grant from the Administration for Native Americans, which is under the Administration for Children and Families and part of the U.S. Department of Health and Human Services; (2) funds allocated from the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (P.L 104-193), specifically a block grant for Temporary Assistance for Needy Families; and (3) TCC unrestricted funds. *Id.* at 4.

To receive this funding, tribes applied with TCC to host the Camps as an independent contractor. *Id.* at 6. Tribes were responsible for creating the camp agendas, purchasing all necessary supplies, providing volunteers,

*Beetus v. USA*
Case No. 4:19-cv-00044-SLG            Page 2 of 9

employees, and chaperones, and choosing the camp location. *Id. at* 4-6. TCC provided administrative and other support for the Camp, as it does for other similar village culture camps in the Interior Alaska Region, pursuant to Sections 3.1.17, 3.1.17.1, and 3.1.17.2 of TCC's IHS AFA ("Behavioral Health Services"). *Id. at* 5.

At the time of the alleged assault, Mr. Adams was a temporary employee of TTC, working as a boat driver at the Camp. *Id. at* 7. However, the assault allegedly took place at a private residence in Tanana Village, not at the Camp, after Mr. Adams brought Ms. Beetus into Tanana from the Camp. *Id.*

## ARGUMENT

### *The ISDEAA and the FTCA*

The Indian Self-Determination and Education Assistance Act of 1975 (ISDEAA), created a system by which tribes could assume responsibility for programs administered to American Indians and Alaska Natives by the Bureau of Indian Affairs due to their status as American Indians and Alaska Natives and, over time, by certain other federal agencies, 25 U.S.C. § 5301 *et seq. Los Coyotes Band of Cahuilla & Cupeño Indians v. Jewell*, 729 F.3d 1025, 1033 (9th Cir. 2013). A tribe "receiving a particular service from the BIA may submit a contract proposal to the BIA to take over the program and

operate it as a contractor and receive the money that the BIA would have otherwise spent on the program." *Id.* The Department of Interior is required to enter into such contracts upon the request of a tribe unless one of five exceptions applies. *Id.*; 25 U.S.C. § 5321(a)(2) (commonly known as "638 contracts").

Congress amended the ISDEAA when it enacted the Tribal Self-Governance Act of 1994. As amended, the ISDEAA established a program of Tribal Self-Governance pursuant to which tribes enter into self-governance compacts that become the basis for annual funding agreements that give the tribes a block of funding that they can allocate among programs, services, functions, and activities assumed from BIA as they see fit. 25 U.S.C. §§ 5301, 5321 & 5361. *See Shirk v. United States*, 773 F.3d 999, 1002 (9th Cir. 2014), *citing Los Coyotes Band*, 729 F.3d at 1031 n.3.

After it enacted the ISDEAA, Congress extended the FTCA's waiver of sovereign immunity to certain claims resulting from the performance of functions under ISDEAA contracts and compacts in Section 314 of the Act of Nov. 5, 1990, P.L. 101-512, the Department of Interior and Related Agencies Appropriation Act ("Section 314"). Section 314 provides:

> With respect to claims resulting from the performance of functions ... under a contract, grant agreement, or any other agreement or compact authorized by the Indian Self– Determination and Education

*Beetus v. USA*
Case No. 4:19-cv-00044-SLG      Page 4 of 9

> Assistance Act of 1975 ... an Indian tribe, tribal organization or Indian contractor is deemed to be part of the Bureau of Indian Affairs ... or the Indian Health Service ... while carrying out any such contract or agreement and its employees are deemed employees of the Bureau or Service while acting within the scope of their employment in carrying out the contract or agreement .... [A]ny civil action or proceeding involving such claims brought hereafter against any tribe, tribal organization, Indian contractor or tribal employee covered by this provision shall be deemed to be an action against the United States and will be defended by the Attorney General and be afforded the full protection and coverage of the Federal Tort Claims Act.

Pub. L. No. 101–512, Title III, § 314, 104 Stat. 1915, 1959–60 (1990) (found at 25 U.S.C. § 5321 note).

The Ninth Circuit has laid out the analytic steps to follow in order to determine whether a particular claim meets the statutory criteria for FTCA coverage pursuant to Section 314, thereby subjecting the United States to potential tort liability for the acts or omissions of tribal employees. *Shirk*, 773 F.3d at 1003. The first step of the § 314 inquiry is for the court to determine whether the alleged activity that gave rise to suit is encompassed by the relevant federal contract or agreement. *Id.* at 1006. Second, courts must decide whether the allegedly tortious activity falls within the scope of the tortfeasor's employment under state law. *Id.* Only if both of these prongs are met will the employee's actions fall under the FTCA. *Id.* A plaintiff's failure of proof at either step, however, defeats the court's subject matter

jurisdiction over the United States. *Id.* Here, Plaintiff's case fails both steps.

1. **Activity Not Encompassed by the Compact**

In order to maintain her action, Plaintiff must first prove that the act or omission giving rise to suit was covered by the Compact – that is, the claim must arise from the performance of some program, function, service, or activity formerly administered by the BIA that was assumed by the tribe under the terms of the agreement. *Shirk*, 773 F.3d at 1006 ("At the first step of the § 314 inquiry, courts must determine whether the alleged activity is, in fact, encompassed by the relevant federal contract or agreement."); *Hinsley v. Standing Rock Child Protective Services,* 516 F.3d 668, 670 (8th Cir. 2008) ("tribes and tribal organizations may enter into contracts with the federal government to assume the administration of programs formerly administered by the federal government on behalf of the tribe").

In this case, TCC provided only pass-through funding to TTC. Moreover, per their agreement, TTC planned and executed the Camp as an independent contractor, including the hiring of Mr. Adams. TTC was in control and managed its own camp.

As for TTC, neither the Title I contract ("Self-Determination Agreement") between TTC and HHS nor the Annual Funding Agreement ("AFA") contain any mention of an agreement to use funding for a Culture

*Beetus v. USA*
Case No. 4:19-cv-00044-SLG            Page 6 of 9

and Wellness Camp as a program, function, service, or activity transferred from the BIA to TTC under the Compact. Exhibits F and G.

Here, the act or omission giving rise to Plaintiff's "claim"— the failure of TCC and/or TTC to provide for the safety of youth following a wellness camp—is , therefore, not a claim that resulted from the performance of, or a failure to perform, a function under the compact. Plaintiff's claim, accordingly, fails at step 1 of *Shirk*'s analytic framework, and this Court must dismiss her action against the United States for lack of subject matter jurisdiction. *Shirk*, 773 F.3d at 1006-07.

## 2. Scope of Employment

Because Plaintiff fails the first step of the *Shirk* inquiry, this Court need not proceed to review the second step of the inquiry. However, Plaintiff fails the second step as well. To satisfy the second step, the employee must be "carrying out the contract or agreement." *Shirk,* 773 F.3d at 1005-06. ("§ 314 only covers employment under the federal contracts, such contracts define the 'employment' for purposes of the 'scope of employment' analysis").

Further, to the extent that one attempts to read the Self-Determination Agreement and/or AFA broadly enough to contend that funding could be allocated for a camp, Mr. Adams was not working in a capacity (boat operator) for which funding is provided under the Self-Determination

*Beetus v. USA*
Case No. 4:19-cv-00044-SLG        Page 7 of 9

Agreement between TTC and HHS. Under 25 U.S.C. 5321(d), FTCA coverage is afforded only to tribal employees while "carrying out the contract or agreement." There are no facts in this case that Mr. Adams, while working as a boat operator for TTC, was doing so as part of the Title I contract between TTC and HHS, as the funding set forth therein is for medical services and functions. In addition, given that the events alleged in the complaint occurred at a private residence, and not at the camp, makes plaintiff's contention that the United States is the proper defendant even more attenuated. Mr. Adams was not in the scope of his employment when these alleged events took place, and they did not occur at the camp. Plaintiff's action against the United States must be dismissed for lack of subject matter jurisdiction. *Id.*, at 1007.

## **CONCLUSION**

WHEREFORE the UNITED STATES OF AMERICA requests that this Court enter an Order dismissing Plaintiff Beetus' Complaint.

//            //


//            //



//            //

*Beetus v. USA*
Case No. 4:19-cv-00044-SLG            Page 8 of 9

RESPECTFULLY SUBMITTED this 15th day of June 2020, in Anchorage, Alaska.

> BRYAN SCHRODER
> United States Attorney
>
> s/ Dustin M. Glazier
> DUSTIN M. GLAZIER
> Assistant U.S. Attorney
> Attorney for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on June 15, 2020,
a true and correct copy of the foregoing
was served electronically on the following:

A. Cristina Weidner Tafs
Phillip Paul Weidner

s/ Dustin M. Glazier
Office of the U.S. Attorney

*Beetus v. USA*
Case No. 4:19-cv-00044-SLG        Page 9 of 9

Case 4:19-cv-00044-SLG   Document 10   Filed 06/15/20   Page 9 of 9