# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

CHANTEL SHARAE LOUISE BEETUS,

                    Plaintiff,

        v.

UNITED STATES OF AMERICA,

                    Defendant.

Case No. 4:19-cv-00044-SLG

## ORDER RE MOTION TO DISMISS

Before the Court at Docket 10 is Defendant United States of America's Motion to Dismiss. Plaintiff Chantel Sharae Louise Beetus opposed at Docket 20. The United States replied at Docket 25. Oral argument was not requested and was not necessary to the Court's decision. For the following reasons, the United States' Motion to Dismiss will be denied.

## I.    BACKGROUND

### A. Statutory Background

In 1975, Congress passed the Indian Self–Determination and Education Assistance Act ("ISDEAA").[1] "The ISDEAA created a system by which tribes could take over the administration of programs operated by the [Bureau of Indian

---

[1] Pub. L. No. 93–638, 88 Stat. 2203 (1975) (codified as amended at 25 U.S.C. § 5301 *et seq.*).

Affairs]."[2]  Pursuant to the ISDEAA, a tribe "receiving a particular service from the BIA may submit a contract proposal to the BIA to take over the program and operate it as a contractor and receive the money that the BIA would have otherwise spent on the program."[3]  To further promote Indian self-determination, Congress enacted the Tribal Self–Governance Act of 1994 ("TSGA") as an amendment to the ISDEAA.[4]  The TSGA permits certain tribes to enter into self-governance compacts with the federal government.[5]  The self-governance compacts "become the basis for annual funding agreements that 'give the tribes a block of funding that they can allocate as they see fit,' thus ensuring greater tribal control over the design and implementation of compact programs."[6]  Together, the ISDEAA as amended by the TSGA "enable[s] tribes to run health, education, economic development, and social programs for themselves.  This strengthened self-government supported Congress' decision to authorize tribes to withdraw trust funds from Federal Government control and place the funds under tribal control."[7]

---

[2] *Shirk v. U.S. ex rel. Dep't of Interior*, 773 F.3d 999, 1002 (9th Cir. 2014) (alteration in original) (internal quotation marks omitted) (quoting *Los Coyotes Band of Cahuilla & Cupeño Indians v. Jewell*, 729 F.3d 1025, 1033 (9th Cir. 2013)).

[3] *Id.* (quoting *Los Coyotes Band of Cahuilla & Cupeño Indians*, 729 F.3d at 1033).

[4] *See id.*; *see also* Pub. L. No. 103–413, 108 Stat. 4270 (1994).

[5] *Shirk*, 773 F.3d at 1002.

[6] *Id.* (quoting *Los Coyotes Band of Cahuilla & Cupeño Indians*, 729 F.3d at 1031 n.3).

[7] *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 180 n.8 (2011) (citation omitted).

Case No. 4:19-cv-00044-SLG, *Beetus v. United States*
Order re Motion to Dismiss
Page 2 of 17

Case 4:19-cv-00044-SLG   Document 26   Filed 03/22/21   Page 2 of 17

After it enacted the ISDEAA, Congress extended the Federal Tort Claims Act's ("FTCA") waiver of sovereign immunity to certain claims resulting from the performance of ISDEAA contracts or agreements.[8]  The extension, commonly known as Section 314, provides:

> [A]n Indian tribe, tribal organization or Indian contractor is deemed hereafter to be part of the Bureau of Indian Affairs in the Department of the Interior or the Indian Health Service in the Department of Health and Human Services while carrying out any such contract or agreement and its employees are deemed employees of the Bureau or Service while acting within the scope of their employment in carrying out the contract or agreement . . . [A]ny civil action or proceeding involving such claims brought hereafter against any tribe, tribal organization, Indian contractor or tribal employee covered by this provision shall be deemed to be an action against the United States and will be . . . afforded the full protection and coverage of the Federal Tort Claims Act.[9]

In short, Indian tribes, tribal organizations, Indian contractors, and their employees are protected by the FTCA when they are carrying out functions authorized in or under an ISDEAA agreement or contract, and the United States is subject to potential tort liability for the acts or omissions of tribal employees.[10]

---

[8] The Federal Tort Claims Act provides for a limited waiver of sovereign immunity by granting federal district courts jurisdiction over "civil actions on claims against the United States . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1).  "While waiving sovereign immunity so parties can sue the United States directly for harms caused by its employees, the FTCA made it more difficult to sue the employees themselves by adding a judgment bar provision."  *Brownback v. King*, 141 S. Ct. 740, 746 (2021).

[9] Pub. L. No. 101–512, Title III, § 314, 104 Stat. 1915, 1959–60 (1990) (25 U.S.C. § 5321 note).

[10] *Colbert v. United States*, 785 F.3d 1384, 1390 (11th Cir. 2015).

Case No. 4:19-cv-00044-SLG, *Beetus v. United States*
Order re Motion to Dismiss
Page 3 of 17

Case 4:19-cv-00044-SLG   Document 26   Filed 03/22/21   Page 3 of 17

Whether the actions of Tanana Chiefs Conference ("TCC")[11] and Tanana Tribal Council ("TTC")[12], and their employees, while allegedly carrying out an ISDEAA agreement or contract, falls within the ambit of Section 314, thereby subjecting the United States to potential FTCA liability, is at issue in this case.

## B. Factual & Procedural Background

Ms. Beetus initiated this action on December 19, 2019.[13] Plaintiff, who was a minor at the time, alleges that she was sexually assaulted by Eric Adams, an employee of TCC and/or TTC, while attending a cultural and wellness camp ("Culture Camp") on an island in the Yukon River about 16 miles upriver from Tanana Village, Alaska, in June 2017.[14] Mr. Adams was a boat operator responsible for transporting camp participants to and from the island camp.[15] Plaintiff brings various tort claims, primarily alleging that the sexual assault was proximately caused by TCC's and/or TTC's failure to adequately safeguard minor

---

[11] Tanana Chiefs Conference is the English name for the Dena' Nena' Henash non-profit organization, which represents the interests of its 42 Alaska Native Village members, including the Native Village of Tanana. *See* Docket 1 at 2, ¶ 3 (Compl.); *see also* Docket 10-1 (Articles of Incorporation and Bylaws of Dena' Nena' Henash); Docket 10-8 at 2, 3 ¶¶ 4, 5, (Aff. of Doreen Deaton).

[12] Tanana Tribal Council is "a governing body made up of and providing governance to the" Native Village of Tanana, a federally recognized Indian Tribe. *See* Docket 1 at 4, ¶ 6 (Compl.); *see also* Docket 10-8 at 3 ¶ 5 (Aff. of Doreen Deaton).

[13] *See* Docket 1 (Compl.).

[14] Docket 1 at 4–5, ¶¶ 10–12 (Compl.); Docket 1 at 6, ¶ 15 ("Eric Adams was acting in the course and scope of his employment as an employee and/or agent and/or apparent agent of Tanana Chiefs Conference and/or Tanana Tribal Council."); Docket 20 at 4–5 (Opp.).

[15] Docket 1 at 6, ¶ 15 (Compl.).

Case No. 4:19-cv-00044-SLG, *Beetus v. United States*
Order re Motion to Dismiss
Page 4 of 17

Case 4:19-cv-00044-SLG   Document 26   Filed 03/22/21   Page 4 of 17

camp participants and hire, train, and supervise employees, including Eric Adams, among other claims.[16]

The Complaint further alleges that the Culture Camp was organized, managed, and funded pursuant to an ISDEAA contract or agreement between the United States and TCC and/or TTC.[17]  Since Ms. Beetus asserts that the alleged conduct of TCC and/or TTC—and their employees—occurred while carrying out an ISDEAA contract or agreement, Ms. Beetus invokes Section 314 to construe her claims as an action against the United States pursuant to the FTCA.[18]  On June 15, 2020, the Government moved to dismiss for lack of subject matter jurisdiction.[19]

---

[16] Docket 1 at 10–14, ¶¶ 29–41 (Compl.).

[17] Docket 1 at 4–5, ¶ 11 (Compl.) (The Culture Camp "was a program involving numerous camps conducted by the Tanana Chiefs Conference, and the . . . Culture Camp was a part of that program and was hosted by the Tanana Tribal Council, pursuant to moneys obtained by the Tanana Chiefs Conference from the United States Government . . . ."); Docket 1 at 3, ¶ 5 ("Tanana Chiefs Conference . . . is a signatory to the Alaska Tribal Health Compact with the U.S. Secretary of Health and Human Services and carries out federal programs for Alaska Natives, American Indians and other eligible individuals, through Funding Agreements with the Indian Health Service and the Bureau of Indian Affairs as authorized by, *inter alia*, the Indian Health Care Improvement Act . . . and Titles V and IV of the Indian Self-Determination and Education Assistance Act . . . ."); Docket 1 at 2, ¶ 4.

[18] *See* Docket 1 at 3, ¶ 5 (Compl.); *see also* Docket 1 at 2, ¶ 2 ("The United States of America is a party defendant under the Federal Tort Claims Act."); Docket 1 at 10, ¶¶ 26, 27 ("The United States may be responsible for Tanana Chiefs Conference under the Federal Torts Claim Act.") ("The United States may be responsible for Tanana Tribal Council under the Federal Torts Claim Act.").

[19] *See* Docket 10 (Mot. to Dismiss).

Case No. 4:19-cv-00044-SLG, *Beetus v. United States*
Order re Motion to Dismiss
Page 5 of 17

Case 4:19-cv-00044-SLG   Document 26   Filed 03/22/21   Page 5 of 17

## II.     LEGAL STANDARDS

### A. Rule 12(b)(1) Motion

The question of whether the United States has waived its sovereign immunity under the FTCA is one of subject matter jurisdiction and may be considered under Federal Rule of Civil Procedure 12(b)(1).[20]   Pursuant to Rule 12(b)(1), a defendant may attack a complaint for lack of subject matter jurisdiction either by a "facial" or a "factual" attack.[21]   In a facial attack, the defendant challenges the complaint by arguing that the complaint lacks jurisdiction "on [its] face."[22]   In a factual attack, a defendant presents extrinsic evidence to demonstrate that the complaint lacks jurisdiction based on the facts of the case.[23]   When resolving a factual attack on jurisdiction, a court "need not presume the truthfulness of the plaintiff's allegations."[24]   "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or

---

[20] *See McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) (applying Rule 12(b)(1) to motion to dismiss FTCA claim); *see also Brownback*, 141 S. Ct. at 749 & n.8 (2021) (holding that when in a FTCA case "pleading a claim and pleading jurisdiction entirely overlap," the district court may dismiss the claim under Rule 12(b)(1) or Rule 12(b)(6), or both).

[21] *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

[22] *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004) (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)).

[23] *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014); *Wolfe*, 392 F.3d at 362; *Safe Air for Everyone*, 373 F.3d at 1039.

[24] *Safe Air for Everyone*, 373 F.3d at 1039 (citing *White*, 227 F.3d at 1242).

Case No. 4:19-cv-00044-SLG, *Beetus v. United States*
Order re Motion to Dismiss
Page 6 of 17

Case 4:19-cv-00044-SLG   Document 26   Filed 03/22/21   Page 6 of 17

other evidence necessary to satisfy its burden of establishing subject matter jurisdiction."[25] "The plaintiff bears the burden of proving by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met."[26]

### B. *Shirk* Analysis

In *Shirk v. United States ex rel. Department of the Interior*, the Ninth Circuit Court of Appeals laid out a two-step analytical test to determine whether the action of a tribal employee falls within the ambit of Section 314, thereby subjecting the United States to potential tort liability pursuant to the FTCA.[27] First, a court "must determine whether the alleged activity is, in fact, encompassed by the relevant [ISDEAA] federal contract or agreement" between a tribe, tribal organization, or Indian contractor and the United States.[28] Second, a court "must decide whether the allegedly tortious action falls within the scope of the tortfeasor's employment under state law."[29] The scope of the relevant ISDEAA contract or agreement "defines the relevant 'employment' for purposes of the scope of employment

---

[25] *Safe Air for Everyone*, 373 F.3d at 1039 (quoting *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003)).

[26] *Leite*, 749 F.3d at 1121 (citing *Harris v. Rand*, 682 F.3d 846, 851 (9th Cir. 2012)).

[27] 773 F.3d 999 (9th Cir. 2014).

[28] *Id.* at 1006.

[29] *Id.*

Case No. 4:19-cv-00044-SLG, *Beetus v. United States*
Order re Motion to Dismiss
Page 7 of 17

Case 4:19-cv-00044-SLG   Document 26   Filed 03/22/21   Page 7 of 17

analysis at step two."[30]  As a tribal employee's actions are covered by the FTCA only if both prongs are met, a "plaintiff's failure at either step is sufficient to defeat subject matter jurisdiction."[31]

## DISCUSSION

The United States moves to dismiss the Complaint on the basis that Plaintiff fails to satisfy both steps of the *Shirk* test.  The United States presents a factual attack by attaching multiple exhibits to its motion.[32]

### I.   *Shirk* Step One

With regard to TCC's potential liability, the United States asserts that the TCC only provided "pass-through funding" to TTC, which was purportedly operating the camp as an independent contractor.[33]  The United States points to the Service Contract between TCC and TTC for the Culture Camp, which contains an independent contractor provision.[34]  Because the FTCA expressly excludes

---

[30] *Id.*

[31] *Id.*; *see* 25 C.F.R. § 900.181 ("Indian contractor means . . . [a]ny other contractor that qualifies as an 'Indian contractor' under the Indian Self-Determination Act.").

[32] Docket 10-1 (TCC Articles of Incorporation), 10-2 (TCC Bylaws), 10-3 (Service Contract), 10-4 (TCC Funding Agreement), 10-5 (Culture Camp Flyer), 10-6 (TTC Self-Determination Agreement), 10-7 (TTC FY2017 Cumulative Funding Report), 10-8 (Aff. of Doreen Deaton); Docket 25-1 (Alaska Tribal Health Compact).  Plaintiff characterizes the United States' motion to dismiss as a factual attack, which the United States does not rebut.  Docket 20 at 6 (Opp.); *see generally* Docket 25 (Reply).

[33] Docket 10 at 6 (Mot. to Dismiss).

[34] Docket 10 at 6 (Mot. to Dismiss) (citing Docket 10-3 at 4 ¶ 11 (Service Contract) ("[TTC] is an independent contractor, not an employee of TCC.")).

Case No. 4:19-cv-00044-SLG, *Beetus v. United States*
Order re Motion to Dismiss
Page 8 of 17

Case 4:19-cv-00044-SLG   Document 26   Filed 03/22/21   Page 8 of 17

coverage for acts or omissions of "contractors," the United States contends that TCC cannot be held liable pursuant to Section 314.[35]  As to TTC's potential liability, the United States contends that TTC's Self-Determination Agreement and Annual Funding Agreement do not "contain any mention of an agreement to use funding for" a Culture Camp.[36]  As such, the United States concludes that TTC's alleged conduct did not result "from the performance of, or a failure to perform" a relevant ISDEAA contract or agreement, thereby failing the first *Shirk* prong.[37]

Plaintiff responds that the United States' independent contractor argument is an attempt to create "an artificial barrier" between TCC and TTC, when in fact, "[TCC] and [TTC] administered the Culture Camp as a joint effort."[38]  Plaintiff identifies TCC's Funding Agreement—which is a separate agreement from TTC's Self-Determination Agreement and Annual Funding Agreement—as the relevant ISDEAA agreement, and notes that it expressly applies the FTCA to both TCC and tribal villages, such as TTC.[39]

---

[35] Docket 10 at 6–7 (Mot. to Dismiss); *see also* Docket 25 at 2–4 (Reply) (citing *Autery v. United States*, 424 F.3d 944, 956 (9th Cir. 2005)); 28 U.S.C. § 2671 (excluding "any contractor with the United States" from the definition of "Federal agency" under the FTCA).

[36] Docket 10 at 6–7 (Mot. to Dismiss) (citing Docket 10-6 (TTC Self-Determination Agreement) and Docket 10-7 (TTC FY2017 Cumulative Funding Report)). In its briefing, the United States references TTC's "Annual Funding Agreement" but attached a "Cumulative Funding Report." *See* Docket 10 at 6–7 (Mot. to Dismiss) (citing Docket 10-7).

[37] Docket 10 at 7 (Mot. to Dismiss).

[38] Docket 20 at 3 (Opp.).

[39] Docket 20 at 3, 11–13 (Opp.); *see* Docket 10-4 at 11–12 (§ 3.7.1 Federal Tort Claims Act Coverage) (§ 15 Memorandum of Agreement with Member Villages) (TCC Funding Agreement).

Case No. 4:19-cv-00044-SLG, *Beetus v. United States*
Order re Motion to Dismiss
Page 9 of 17

Here, it appears that the relevant ISDEAA contract or agreement for both TCC and TTC is the Tanana Chiefs Conference's Funding Agreement with the Indian Health Service for Fiscal Years 2015–2017 ("TCC's Funding Agreement").[40] As both parties distinguish TCC and TTC in some manner, the Court will address each in turn.

With respect to TCC, the United States acknowledges that TCC employees were carrying out certain aspects of the Culture Camp as authorized by TCC's Funding Agreement. According to the United States, "TCC provided administrative and other support for the Camp . . . pursuant to Sections 3.1.17, 3.1.17.1, and 3.1.17.2 of TCC's" Funding Agreement.[41] For example, "TCC's behavioral health and wellness and prevention staff attended the Native Village of Tanana's Culture Camp and provided health and wellness programing for the children, and also provided materials for use by the Camp staff."[42] Plaintiff, in part, alleges that TCC employees present at the Culture Camp were negligent in supervising camp youth.[43] Accordingly, as the United States acknowledges that TCC employees

---

[40] See *infra* pp. 11–13; *see also* Docket 10-4 (TCC Funding Agreement).

[41] Docket 10 at 3 (Mot. to Dismiss) (citing Docket 10-8 at 5 (Aff. of Doreen Deaton)); Docket 10-4 at 8–9 (§ 3.1.17 Behavioral Health Services) (§ 3.1.17.1. Community Based Services) (§ 3.1.17.2 Prevention and Wellness Services) (TCC Funding Agreement).

[42] Docket 10-8 at 5, 6 ¶¶ 12, 16 (Aff. of Doreen Deaton) ("Under our Annual Funding Agreement, TCC is obligated to provide covered health services to member Tribes who delegate their federal health care shares to TCC . . . .").

[43] *See, e.g.*, Docket 1 at 5, 7 ¶¶ 13, 19 (Compl.).

Case No. 4:19-cv-00044-SLG, *Beetus v. United States*
Order re Motion to Dismiss
Page 10 of 17

Case 4:19-cv-00044-SLG   Document 26   Filed 03/22/21   Page 10 of 17

were acting pursuant to TCC's Funding Agreement at the Culture Camp, that alleged activity is encompassed within the relevant Funding Agreement. TCC's Funding Agreement itself also expressly applies the FTCA to any TCC employees carrying out services such as those offered at the Culture Camp.[44]

TCC's Funding Agreement provides FTCA coverage to TTC's employees as well:

> Funds provided under this Agreement may be allocated to and expended by an Alaska Native Village ("Village") which is a party to this Agreement in accordance with the terms of the Compact, this Agreement, and a Memorandum of Agreement ("MOA") approved by TCC and the Village. The Federal Tort Claims Act will apply to [programs, services, functions, and activities] carried out by the Village under such MOA and to the village and its employees to the same extent as if they had been carried out directly by TCC . . . TCC will be responsible for assuring compliance by the Village with the Compact, this Funding Agreement, and the MOA.[45]

The United States identifies the Service Contract as the above-referenced Memorandum of Agreement.[46]  The Service Contract, in turn, applies to the Culture Camp, providing that TTC would "[c]oordinate, manage, and implement a Culture Wellness Camp to include securing the site location and preparation, provide food and lodging for participants, coordinate travel, provide sanitation, health and

---

[44] Docket 10-4 at 11 § 3.7.1 ("Pursuant to Article V, Section 3  [Federal Tort Claims Act Coverage; Insurance] of the Alaska Tribal Health Compact, the Federal Tort Claims Act applies to TCC's [programs, services, functions, and activities] under this Agreement . . . .") (TCC Funding Agreement).

[45] Docket 10-4 at 21 § 15 (Memorandum of Agreement with Member Villages) (TCC Funding Agreement).

[46] Docket 25 at 2 (Reply).

Case No. 4:19-cv-00044-SLG, *Beetus v. United States*
Order re Motion to Dismiss
Page 11 of 17

Case 4:19-cv-00044-SLG   Document 26   Filed 03/22/21   Page 11 of 17

safety, and all logistical details."[47]  At least some of the alleged tortious acts and omissions of TTC employees plainly fall within the Service Contract, which was incorporated into TCC's Funding Agreement.[48]  Accordingly, the alleged activities of TTC employees, including Mr. Adams' provision of transportation services and his hiring and supervision, are encompassed within TCC's Funding Agreement.[49]

Despite the clauses in TCC's Funding Agreement expressly applying the FTCA to TCC and TTC employees carrying out the Culture Camp, the United States maintains that dismissal of this action under step one of *Shirk* is warranted for three reasons.  First, the United States argues that neither TTC's Self-Determination Agreement nor TTC's Annual Funding Agreement (which is separate from TCC's Funding Agreement) "contain any mention of an agreement

---

[47] Docket 10-3 at 1 (Service Contract).

[48] Docket 25 at 1–2 (Reply) ("As an initial matter, Plaintiff has alleged an incomplete evidentiary record before the Court, suggesting that the motion to dismiss cannot be determined without the Compact and Memorandum of Agreement approved by the Tanana Chiefs Conference (TCC) and the Tanana Tribal Council (TTC).  For the benefit of the Court, Defendant has attached the Compact as Exhibit I, and points the Court to the previously submitted Exhibit C (Service Contract between TCC and Native Village of Tanana) as the Memorandum of Agreement referenced in the TCC's Funding Agreement.") (citing Docket 10-4 at 21 (§ 15 Memorandum of Agreement with Member Villages) (TCC Funding Agreement)); Docket 10-3 (Service Contract).

[49] *See, e.g.*, Docket 1 at 5–6, ¶ 14 (Compl.) ("Tanana Chiefs Conference and/or Tanana Tribal Council jointly promoted and held the Culture & Wellness Camp.  Tanana Chiefs Conference's and/or Tanana Tribal Council's failures, include, among other things, the lack of adequate and proper guidelines and planning for the Culture & Wellness Camp, the lack of adequate and proper hiring and supervision of the Culture & Wellness Camp boat driver Eric Adams and other employees with supervisory powers over Chantel Beetus, the lack of proper safeguards for the protection of campers, and the ignoring of warning signs of inappropriate conduct and behavior by Culture & Wellness Camp employees and/or agents and/or apparent agents.").

Case No. 4:19-cv-00044-SLG, *Beetus v. United States*
Order re Motion to Dismiss
Page 12 of 17

to use funding for a Culture and Wellness Camp . . . ."[50]  Even if that were the case, the Court disagrees that TTC's Self-Determination Agreement or TTC's Annual Funding Agreement is the relevant ISDEAA contract or agreement for *Shirk* purposes.[51]  As previously discussed, the United States acknowledges that TCC employees were carrying out aspects of TCC's Funding Agreement at the Culture Camp and incorporated the Service Contract between TCC and TTC, which provided that TTC employees would principally implement the Culture Camp, into TCC's Funding Agreement.[52]  Based on this evidence, the Court has found that TCC's Funding Agreement is the relevant ISDEAA contract or agreement. Second, the United States asserts that the funding that TCC received and passed on to TTC was not "typical federal funding."[53]  As the United States does not provide any legal authority or meaningful analysis to support this proposition, it is not exactly clear what point is being made.  In any event, it is not apparent to the Court that the precise source of federal funding for an ISDEAA agreement is

---

[50] Docket 10 at 6–7 (Mot. to Dismiss) (citing Docket 10-6 (TTC Self-Determination Agreement) and Docket 10-7 (TTC FY2017 Cumulative Funding Report)).

[51] In its briefing, the United States references TTC's "Annual Funding Agreement" but attached a "Cumulative Funding Report." *See* Docket 10 at 6–7 (Mot. to Dismiss) (citing Docket 10-7). As such, the Court cannot evaluate the United States' claim as to that agreement.

[52] *See* Docket 10 at 3 (Mot. to Dismiss) ("TCC provided administrative and other support for the Camp, as it does for other similar village culture camps in the Interior Alaska Region, pursuant to Sections 3.1.17, 3.1.17.1, and 3.1.17.2 of TCC's IHS AFA ("Behavioral Health Services").") (citing Docket 10-8 at 5 (Aff. of Doreen Deaton)); *see also supra* pp.11–12.

[53] Docket 10 at 6 (Mot. to Dismiss); Docket 25 at 3 (Reply).

Case No. 4:19-cv-00044-SLG, *Beetus v. United States*
Order re Motion to Dismiss
Page 13 of 17

Case 4:19-cv-00044-SLG   Document 26   Filed 03/22/21   Page 13 of 17

determinative.[54]  Third, the United States asserts that TTC is an independent contractor not subject to the FTCA.[55]  The United States points to the Service Contract itself, which contains a generic independent contractor provision.[56]  However, the United States attempts to rely on an inapposite independent contractor case.[57]  None of the parties to that suit were "Indian tribe[s], tribal organization[s] or Indian contractor[s]," all of which are covered by Section 314.[58]  Here, TTC is an Indian contractor—who is covered by the FTCA—not a private

---

[54] *See, e.g.*, *Manuel v. United States*, No. 1:14-CV-665-LJO-BAM, 2014 WL 6389572, at *8 (E.D. Cal. Nov. 14, 2014) ("[T]he relevant inquiry for whether a Tribal employee is an employee of the government under the ISDEAA is whether that Tribal employee is carrying out a self-determination contract; the source of the funding for that Tribal employee's position is not dispositive.").  Even though the court in *Manuel* relied, in part, on the district court opinion in *Shirk*, which was later vacated by the Ninth Circuit on grounds not expressly addressing the source of funding issue, the Court still finds the district court's reasoning regarding the funding source to be persuasive.  *See Shirk v. U.S. ex rel. Dep't of Interior*, No. CV–09–1786–PHX–NVW, 2010 WL 3419757, at *5 (D. Ariz. Aug. 27, 2010), *vacated and remanded*, 773 F.3d 999 (9th Cir. 2014).

[55] Docket 10 at 6 (Mot. to Dismiss); Docket 25 at 2–4 (Reply).

[56] Docket 25 at 2 (Reply) ("While TCC's Funding Agreement indicates FTCA coverage for villages implementing programs as an extension of TCC, the Service Contract demonstrates that TTC implemented the Culture Camp as an independent contractor instead.") (citing Docket 10-3 at 4 ¶ 11 (Service Contract)).

[57] Docket 25 at 4 (Reply) (citing *Autery*, 424 F.3d at 956); *see also* 28 U.S.C. § 2671 (excluding "any contractor with the United States" from the definition of "Federal agency" under the FTCA).

[58] Pub. L. No. 101–512, Title III, § 314, 104 Stat. 1915, 1959–60 (1990) (found at 25 U.S.C. § 5321 note).

Case No. 4:19-cv-00044-SLG, *Beetus v. United States*
Order re Motion to Dismiss
Page 14 of 17

Case 4:19-cv-00044-SLG   Document 26   Filed 03/22/21   Page 14 of 17

contractor with the federal government—who is not.[59]  Accordingly, the Court finds the United States' arguments unpersuasive.

In conclusion, Plaintiff alleges that TCC and/or TTC employees were negligent in supervising, training, and hiring Culture Camp employees, and in monitoring youth participants.  Both TCC and TTC employees were carrying out aspects of the Culture Camp, which were encompassed within the relevant ISDEAA agreement, TCC's Funding Agreement.  Accordingly, the Court finds that the first step of the *Shirk* analysis is satisfied.

## II. *Shirk* Step Two

Under the second *Shirk* step, a court "must decide whether the allegedly tortious action falls within the scope of the tortfeasor's employment under state law."[60]  The United States asserts that "an employee perpetrating a sexual assault cannot" be acting within his scope of employment under Alaska state law.[61]

---

[59] *See, e.g.*, *Demontiney v. U.S. ex rel. Dep't of Interior, Bureau of Indian Affs.*, 255 F.3d 801, 808 (9th Cir. 2001) (agreeing with Eighth Circuit Court of Appeals that "the purpose and policy of the ISDEAA are best served if 'Indian contractor' is limited to a 'tribe-related organization that may itself enter into a self-determination contract, not a private party . . . that has been retained to work on a project funded by a self-determination contract'" (quoting *FGS Constructors, Inc. v. Carlow*, 64 F.3d 1230, 1234–35 (8th Cir. 1995))).  As a federally recognized Indian tribe, TTC could itself enter into a self-determination agreement.  *See* Docket 10-8 at 3 ¶ 5 (Aff. of Doreen Deaton).

[60] 773 F.3d at 1006.

[61] Docket 25 at 6 (Reply) (citing *D.W.J. v. Wausau Bus. Ins. Co.*, 192 F. Supp. 3d 1014 (D. Alaska 2016) and *VECO, Inc. v. Rosebrock*, 970 P.2d 906 (Alaska 1999)).  The United States also asserts that TTC's Self-Determination Agreement and Annual Funding Agreement did not contain funding for Mr. Adams position, a boat operator, and, therefore, he could not be

Case No. 4:19-cv-00044-SLG, *Beetus v. United States*
Order re Motion to Dismiss
Page 15 of 17

Case 4:19-cv-00044-SLG   Document 26   Filed 03/22/21   Page 15 of 17

Plaintiff responds that it is inappropriate to determine in a 12(b)(1) motion whether Mr. Adams was acting within the scope of his employment because this question is "generally a fact-specific inquiry for a jury."[62]  Plaintiff also responds that Mr. Adams' conduct "is not the sole basis of culpable conduct," maintaining that her claims of negligent supervision, training, and hiring of employees and negligent monitoring of minor children against TCC and TTC are still actionable under Ninth Circuit precedent.[63]

The Court need not determine at this juncture whether there is a plausible argument that Mr. Adams' actions fall within the scope of his employment.[64]  This is because Plaintiff has also pleaded negligent hiring and supervision claims and

---

"carrying out the contract or agreement" pursuant to Section 314.  Docket 10 at 7–8 (Mot. to Dismiss).  However, as previously discussed, the Court disagrees that TTC's Self-Determination Agreement and Annual Funding Agreement are the relevant ISDEAA contracts or agreements.  *See supra* pp. 11–13.

[62] Docket 20 at 16 (Opp.) ("Concerning whether Eric Adams committed the sexual assault while he was in the course and scope of his employment, that determination should not be made at the Rule 12(b)(1) juncture. Under Alaska state law, whether conduct is within the scope of employment is generally a fact-specific inquiry for a jury.") (citing *Ondrusek v. Murphy*, 120 P.3d 1053, 1057 (Alaska 2005)).

[63] Docket 20 at 16 (Opp.) (citing *Kearney v. United States*, 815 F.2d 535 (9th Cir. 1987) (holding intentional tort exception to FTCA did not apply when Government's own negligence was alleged proximate cause of injury)).

[64] *Cf. Shirk*, 773 F. 3d at 1007 ("Thus, a court could decide such a case at step two by stating that there is no plausible argument that the employee's actions fall within the scope of his employment, where such employment is defined as carrying out a federal contract.").

Case No. 4:19-cv-00044-SLG, *Beetus v. United States*
Order re Motion to Dismiss
Page 16 of 17

the United States does not dispute that these FTCA claims may proceed under Ninth Circuit precedent.[65]

## CONCLUSION

In light of the foregoing, the United States' Motion to Dismiss at Docket 10 is DENIED.

DATED this 22nd day of March, 2021, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[65] *See Morrill v. United States*, 821 F.2d 1426, 1427 (9th Cir. 1987 (holding FTCA exception for claims arising out of sexual assault did not preclude imposition of liability on Government for supervisory negligence); *Kearney*, 815 F.2d at 537; *Bennett v. United States*, 803 F.2d 1502, 1503 (9th Cir. 1986); *see also Senger v. United States*, 103 F.3d 1437, 1442 (9th Cir. 1996) (holding *Morrill* still good law with respect to claim of negligent hiring and supervision).

Case No. 4:19-cv-00044-SLG, *Beetus v. United States*
Order re Motion to Dismiss
Page 17 of 17

Case 4:19-cv-00044-SLG   Document 26   Filed 03/22/21   Page 17 of 17